**Date Signed:**
**December 19, 2013**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No. 13-00353 |
| | Chapter 11 |
| 1250 Oceanside Partners, | |
| Debtor. | |
| 1250 Oceanside Partners, | Adv. Pro. No. 13-90053 |
| Plaintiff, | |
| vs. | |
| Lawrence Shaw and Lisa Shaw, et al., | |
| Defendants. | Re: Docket Nos. 17, 23 |

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

This decision is largely governed by the principle of *stare decisis* and my

decision in *1250 Oceanside v. Maryl Group (In re 1250 Oceanside Partners)*, No.

13-90049, slip op. (Bankr. D. Haw. Oct. 1, 2013).

The debtor in possession, 1250 Oceanside Partners ("Oceanside"), seeks to

enforce a promissory note and foreclose a mortgage made by defendants Lawrence Shaw and Lisa Shaw ("the Shaws"). The other defendants claim interests in the mortgaged property. Oceanside now seeks summary judgment. The Shaws argue that the court lacks jurisdiction, that Oceanside is not entitled to foreclose, and that if it is entitled to foreclose, it is not entitled to a deficiency judgment. There is no dispute as to any material fact. Oceanside is entitled to foreclose on the property, but it is not entitled to a deficiency judgment against the Shaws at this stage in the litigation. I recommend that the District Court enter judgment accordingly.

## Facts

In December 1999, Oceanside sold the Shaws a lot in a planned, but unfinished, development called Hokuli'a. Dkt. 17, at 7. To document the transaction, the parties executed four documents at or about the same time: an undated Purchase Contract;[1] a warranty deed, dated December 29, 1999; a promissory note by the Shaws in favor of Oceanside, dated January 27, 2000; and a mortgage, dated December 21, 1999. Dkt. 30-2, at 23; dkt. 30-2, at 36-47; dkt. 30-2, at 2-5; dkt. 30-2, at 11-17.

The Purchase Contract incorporated the note, mortgage, and warranty deed

---

[1] Neither the Shaws or Oceanside filed a signed, dated version of the contract.

U.S. Bankruptcy Court - Hawaii   #13-90053   Dkt # 56   Filed 12/19/13   Page 2 of 22

as essential parts of the agreement. Dkt. 17-2, at 1. The Purchase Contract obligated Oceanside to make a number of improvements on the lot and in and around the development. Dkt. 17-2, at 4-5.

The Purchase Contract, deed, and mortgage contain similar, but not identical, dispute resolution provisions.

Paragraph 17.a of the Purchase Contract requires mediation and arbitration of all disputes relating to the Purchase Agreement, the sale of the lot, or "any other aspect of the relationship" between Oceanside and the Shaws. Dkt. 17-2, at 7. Paragraph 17.b, however, provides that, if the Shaws default under the note or mortgage, Oceanside is not required to arbitrate, but instead "has the absolute right" to "seek to foreclose on the property covered by the Mortgage by a foreclosure action filed in the Circuit Court of the Third Circuit, State of Hawaii," or "seek to foreclose on the property covered by the Mortgage by a non-judicial foreclosure . . . ." Dkt. 17-2, at 7-8. The Shaws waived any right they might have to delay foreclosure proceedings "pending the resolution of any arbitrable disputes . . . ." Dkt. 17-2, at 7. The parties agreed that, "regardless of whether [Oceanside] is awarded or denied either of the foregoing remedies, all issues of monetary damages or costs of any type relating to disputes that are subject to arbitration under this Paragraph shall continue to be subject to arbitration . . . ." Dkt. 17-2, at

U.S. Bankruptcy Court - Hawaii  #13-90053  Dkt # 56  Filed  12/19/13  Page 3 of 22

7.

The deed includes dispute resolution provisions that are almost identical to the Purchase Contract. The only difference – and it is a crucial difference – is that the provision giving Oceanside the right to pursue judicial foreclosure does not mention any specific forum. Dkt. 24-1, at 35.

The mortgage gives Oceanside the right to pursue judicial or nonjudicial foreclosure. Dkt. 24-1, at 14-15. Like the deed, but unlike the Purchase Contract, the mortgage does not mention any specific forum. Dkt. 24-1, at 15

In 2006, Oceanside granted a security interest in the Shaws' note and mortgage (along with others') to Textron Financial Corporation ("Textron") to secure Oceanside's obligations under a revolving line of credit.  Dkt. 52, at 23-104. The security agreement permits Oceanside to enforce the Shaw note and use the proceeds to pay its debt to Textron (unless Oceanside defaulted in its obligations to Textron, in which event Textron could take collection action against the Shaws directly).[2] Dkt. 52, at 30-31; dkt. 19, at 42.

Oceanside also indorsed the Shaws' note and assigned the Shaws' mortgage

---

[2]The Textron loan agreement provides that Textron "shall not take any action which is described in paragraph 7.2(c) unless an Event of Default exists."  Dkt. 61, at 46.  Paragraph 7.2(c) provides that, if an Event of Default occurs, Textron may (but is not required to) take direct collection against the Shaws and other lot purchasers.  The negative inference is that, unless and until an Event of Default occurred and Textron chose to exercise its rights, Oceanside could continue to collect and enforce the Shaws' note and mortgage.

4

to Textron. Dkt. 44-1, at 5; dkt. 52, at 92. Although the endorsement and assignment are absolute on their face, the Textron loan agreement makes it clear that the transfers were intended for security purposes only. *See* Dkt. 52, at 30-31.

Later, Textron assigned its interest in the notes and mortgages to Sun Kona Finance II ("SKF II"). Dkt. 52, at 82-104; dkt. 24-1, at 7. SKF II is currently a secured creditor in this bankruptcy and it is in possession of the Shaws' note. Dkt. 24-1, at 7.

Oceanside failed to complete the Hokuli'a development as promised. Dkt. 34-1, at 2-3. The Shaws ceased payment on the note in 2009. Dkt. 35, at 3.

On March 26, 2012, the Shaws signed a release, which discharged its claims against Oceanside. Dkt. 24-1, at 25. After signing the release, the Shaws did not resume payments on the note. Dkt. 35, at 3.

Oceanside filed for chapter 11 bankruptcy on March 6, 2013. Bankr. No. 13-00353, Dkt. 1. On May 24, 2013, Oceanside sent the Shaws a demand letter declaring default and requiring the Shaws to cure its arrears. Dkt. 24-1, at 55-57.

After it filed for bankruptcy, Oceanside and SKF II entered into a stipulation, in which SKF II assigned its interest in the note and mortgage "to the extent necessary to allow Oceanside to commence and litigate to completion foreclosure actions against non-performing borrowers." Dkt. 38, at 21.

U.S. Bankruptcy Court - Hawaii   #13-90053   Dkt # 56   Filed 12/19/13   Page 5 of 22

This adversary proceeding began on July 26, 2013. Dkt. 1.

In its motion, Oceanside seeks summary judgment on two issues: first, that the Shaws are in default and owe Oceanside according to the terms of the note; and second, that Oceanside is entitled to foreclose on the lot. *See* Dkt. 23. The Shaws filed a motion to dismiss. Dkt. 17.

## Jurisdiction

The district court has jurisdiction of all cases under title 11, and all civil proceedings arising under title 11 or arising in or related to cases under title 11. 28 U.S.C. § 1334.

A proceeding is "related to" a bankruptcy case if "*the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. . . .* An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)) (emphasis in original).

This adversary proceeding is "related to" Oceanside's bankruptcy case. The collection of the Shaws' debt to Oceanside will be applied to reduce Oceanside's

U.S. Bankruptcy Court - Hawaii   #13-90053   Dkt # 56   Filed 12/19/13   Page 6 of 22

debt to SKF II and thus will "alter the debtor's . . . liabilities," *Pegasus*, 394 F.2d at 1193. It is also conceivable that the collections could exceed SKF II's claims and produce a surplus for other creditors. Either of these is a sufficient nexus to justify "related to" jurisdiction.

The district court has the power to refer to the bankruptcy court for that district all cases and proceedings within the district court's jurisdiction under section 1334. 28 U.S.C. § 157(a). The district court for this district has exercised that authority. LR 1070.1(a).

The bankruptcy court has the statutory power to "hear and determine all cases under title 11 and all core proceedings arising under title 11 or arising in a case under title 11, referred [by the district court]," and may enter final judgments in such proceedings subject to ordinary appellate review. 28 U.S.C. § 157(b)(1).

Section 157(b)(2) contains a nonexclusive list of "core proceedings." The only category of "core proceedings" that might arguably cover this adversary proceeding is section 157(b)(2)(O). This "catch-all" category must be interpreted in light of the Supreme Court decision which prompted Congress to enact section 157. In *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), the court held that Congress can not give bankruptcy judges, who lack Article III protections, power to enter final judgments on state law claims by

7

debtors against certain third parties. Although the fractured opinions in the *Marathon* case make interpretation difficult, it would not be prudent to treat this adversary proceeding, in which the trustee asserts garden variety state law claims against nonconsenting defendants, as a core proceeding.

Section 157(c)(1) provides that the bankruptcy court may "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11" and may submit proposed findings of fact and conclusions of law to the district court, subject to de novo review of any matters to which a party makes a timely and specific objection. I will proceed in this fashion.

## Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c), Fed. R. Bankr. P. 7056. Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Huey v. Honeywell, Inc.*, 82 F.3d 327, 334 (9th Cir. 1996) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

8

**Discussion**

## I.     The  Shaws' Motion to Dismiss

The  Shaws move to dismiss Oceanside's complaint. They argue that the court lacks jurisdiction because paragraph 17 of the Purchase Contract provides for judicial foreclosure only in the Circuit Court of the Third Circuit, State of Hawaii. Dkt. 17, at 13-16. In the alternative, they move the court to order the parties to arbitrate this dispute. Dkt. 17, at 16-18. In response, Oceanside points to the dispute resolution provisions of the deed and mortgage which permit judicial foreclosure but do not mention any particular forum. Dkt. 30, at 17.

The question is an issue of contract interpretation. Courts should interpret contracts according to their plain, ordinary meaning. *Brown v. KFC National Management Co.*, 82 Hawai'i 226, 240, 921 P.2d 146, 160 (Haw. 1996). When documents concern the same subject matter and were executed at the same time, courts read them together. *Parker v. BankAmerica Corp.*, 50 F.3d 757, 763 (9th Cir. 1995); *see Hayashi v. Chong*, 2 Haw. App. 411, 634 P.2d 105 (1981); *see also* Restatement (Second) of Contracts § 202(2) (1981) ("A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together.").

The  Shaws argue that paragraph 17 is valid and enforceable. Dkt. 37, at 13-

9

14. This statement is correct, but the argument ignores the provisions in the warranty deed and the mortgage, which do not designate a specific forum in which foreclosures may take place. Dkt. 24-1, at 35; dkt. 24-1, at 14-15.

Oceanside argues that it is suing on the note and mortgage, which are separate instruments from the Purchase Contract, and that therefore paragraph 17 of the Purchase Contract does not apply. Dkt. 30, at 11-14. This argument is also incorrect. The Purchase Contract states that the note and mortgage are "an essential part" of the contract. Dkt. 30-2, at 23. A party cannot avoid the effect of one document in a set of related documents by choosing to sue on another document in the same set.

The proper interpretation of all three documents is that Oceanside may bring its foreclosure action in any court with jurisdiction. The most sensible way to reconcile the difference in the documents is to view the Third Circuit as one permissible forum for a judicial foreclosure, but not as the only possible forum. If the selection of the Third Circuit were important to the parties, one would expect that all three documents would specify that forum. But only the Purchase Contract mentions that forum, and the document that is most relevant to a foreclosure case, the mortgage, does not. Therefore, reading all the instruments together, I conclude that Oceanside may seek judicial foreclosure in any court with jurisdiction to

U.S. Bankruptcy Court - Hawaii   #13-90053   Dkt # 56   Filed 12/19/13   Page 10 of 22

preside over a mortgage foreclosure of the subject property. Because Oceanside's foreclosure proceeding is "related to" its chapter 11 proceeding, 28 U.S.C. § 1334, dismissal of this adversary proceeding is not warranted.

## II.    Oceanside's Motion for Partial Summary Judgment

Oceanside seeks summary judgment on its claims for foreclosure of the mortgage. Dkt. 23. The Shaws oppose the motion, arguing that 1250 Oceanside does not have standing to enforce the note and mortgage, and that Oceanside's failure to perform its obligations excused them from the obligation to make payments on the note. Dkt. 34.

### A.    Standing

The Shaws argued in their opposition to the motion for summary judgment that Oceanside does not have standing to enforce the note and mortgage because the note was endorsed to SKF II, not Oceanside. Dkt. 34, at 16-18. Their argument is essentially that Oceanside is not a holder or someone entitled to enforce the note and mortgage under Article 3 of the Uniform Commercial Code (UCC) and Hawaii law. Dkt. 34, at 15-19.

Oceanside argues that it is a holder of the note, and thus entitled to enforce the note. Dkt. 38, at 3. Its argument is that after it sold the Hokuli'a lots on credit to the lot purchasers, it granted a security interest in the buyers' notes and

11

mortgages (including the Shaws') to Textron. Textron, then, assigned its interest in the notes to SKF II. Dkt. 38, at 4. Because Oceanside endorsed the note to Textron for security purposes only, Oceanside argues that it is still entitled to enforce the note.

A "person entitled to enforce" a negotiable instrument under Article 3 of the UCC has standing to sue on the note. *Veal v. Am. Home Mortgage Servicing, Inc. (In re Veal)*, 450 B.R. 897, 911-12 (9th Cir. BAP 2011).

The UCC defines a "person entitled to enforce" an instrument, such as a promissory note, as "(i) the holder of the the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 490:3-309 or 490:3-418(d)." Haw. Rev. Stat. § 490:3-301.

Clause (i) does not apply to Oceanside. The "holder" of a negotiable instrument is "the person in possession of [the instrument] that is payable either to bearer or to an identified person that is the person in possession. *Id*. § 490:1-201(defining "holder"). The Shaws' note is indorsed and payable to SKF II, not Oceanside.

Clause (iii) is also inapplicable. Section 3-309 pertains to lost, stolen, or destroyed instruments. Section 3-418 deals with payments made or accepted due

U.S. Bankruptcy Court - Hawaii  #13-90053  Dkt # 56  Filed 12/19/13  Page 12 of 22

to certain kind of mistakes.  Neither provision applies.

Clause (ii) applies to Oceanside if (a) Oceanside is a nonholder, (b) Oceanside has the rights of a holder, and (c) Oceanside is in possession of the Shaws' note.

**(a)** **Nonholder.**  Oceanside is a nonholder, for the reasons given above.

**(b)** **Rights of Holder.**  Oceanside has the rights of a holder. The security agreement with Textron did not divest Oceanside of its rights to collect the note. *See* Dkt. 53, at 30-31. Oceanside merely granted Textron a security interest in the Shaws' note and mortgage and the right to foreclose and collect on the note at Textron's option after Oceanside defaulted. *See* Dkt. 53, at 30-31, 42. Judging from the agreement, Oceanside indorsed the notes to Textron to facilitate foreclosure and collection, if Oceanside defaulted on its obligations to Textron. *See* Dkt. 53, at 30-31, 42.  Nothing in the UCC prohibits this. *See* Haw. Rev. Stat. § 490:3-204, cmt. 3 (describing an indorsement for the purpose of granting a security interest).

Textron's transfer of the Shaws' note to SKF II does not change the result. Textron only transferred  to SKF II the rights Textron had under the security agreement. A transfer "vests in the transferee any right of the transferor to enforce the instrument . . . ." Haw. Rev. Stat. § 490:3-203(b). Since Oceanside still

13

retained rights in the note when it entered into the Textron security agreement, it maintained those rights after Textron assigned its interest in the notes to SKF II. SKF II merely obtained the rights Textron had under the security agreement.

Possibly as a prophylactic against litigation surrounding Oceanside's standing to foreclose the on the note and mortgage, SKF II assigned its interests in the notes and mortgages to Oceanside to expedite the foreclosure process. This was unnecessary, since Oceanside never lost the right to enforce the note. Regardless, the stipulation is further evidence that Oceanside has rights in the note and mortgage.

(c)     **Possession.**   SKF II, not Oceanside, is in physical possession of the note.  But this does not end the inquiry.

The UCC does not define possession. *See* Haw. Rev. Stat. §§ 490:1-201, 490:3-103.    Under the UCC, possession by an agent is permissible.[3]   Comment 3 to section 9-313 specifically states that, in the context of secured transactions, a person can have possession through an agent. Haw. Rev. Stat. § 490:9-313, cmt. 3. More generally, the law of agency supplements the UCC unless the UCC displaces it. Haw. Rev. Stat. § 490:1-103(b). Hawaii has adopted the Restatement (Second)

---

[3] For a discussion, see David A. Pisciotta, Kemp v. Countrywide*: Problem of Possession*, Am. Bankr. Inst. J., Apr. 20, 2011, *available at* http://journal.abi.org/sites/default/files/2011/February/Lien.pdf.

14

of Agency. *See, e.g., State v. Hoshijo ex rel. White*, 102 Haw. 307 (Haw. 2003). A principal-agent relationship exists if both parties consent to one person acting on behalf of the other. Restatement (Second) of Agency § 1 (1958). The one for whom action is taken is the principal, and the one who is to act is the principal. *Id.*[4]

Here, SKF II holds physical possession of the note, both for its benefit (to maintain the perfected status of its security interest) and for Oceanside's benefit. Both parties consented to SKF II possessing the note pursuant to the security agreement. SKF II consented to possess the notes when it assumed the rights and obligations under the Oceanside-Textron security agreement. Dkt. 53, at 82. Oceanside consented by entering into the agreement with SKF II's predecessor-in-interest, Textron. Oceanside's and SKF II's stipulation is further evidence that both parties consent to SKF II possessing the note.

The Shaws point out that the assignment of the Shaws' note is drafted as an absolute assignment, which they say is inconsistent with the security agreement which grants only a security interest. They claim that this inconsistency creates a genuine dispute of fact. The Shaws are mistaken. A transfer absolute on its face

---

[4]*Hanalei, BRC Inc. v. Porter*, 7 Haw. App. 304 (Haw. Ct. App. 1988), is not to the contrary. This case stated that in order to enforce a note, the enforcing party must have "actual possession" of the note. *Porter*, 7 Haw. App. at 309-10. The case did not define "actual possession." Id. Even if it had defined it, this was dictum, as it was not necessary to the decision.

15

that is intended for security is treated as the grant of only a security interest. Hawaii Rev. Stat. § 490:9-109(a)(1) and cmt. 2. Taken as a whole, the record clearly shows that the transaction was meant to create a security interest.

The Shaws also argue that their note was not an "eligible instrument" as defined in the security agreement and therefore is not part of SKF II's collateral. The security agreement provides otherwise. Paragraph 3.1 of the agreement provides that "Borrower hereby grants to Lender a security interest in and assigns to Lender the Receivables Collateral." Dkt. 52 at 31. Paragraph 1.49 defines "Receivables Collateral" as, among other things, "the Instruments which Borrower now or hereafter assigns, endorses, or delivers to Lender pursuant to this Agreement . . . ." Dkt. 52 at 27. Paragraph 1.26 defines "Instrument" as "a purchase money promissory note which has arisen out of a sale of a Lot by Borrower to a Purchaser, is made payable by such Purchaser to Borrower, and is secured by a Purchaser Mortgage." There is no question that the Shaws' note is an Instrument which is part of the Receivables Collateral in which SKF II has a security interest.

The security agreement uses the term "Eligible Instrument," not to define the scope of the lender's collateral, but rather to fix the maximum amount that Oceanside was entitled to borrow. Under paragraph 2.1, Oceanside's borrowing

16

is limited by (among other factors) the "Receivables Loan Borrowing Base." Dkt. 52 at 29. Under paragraph 1.51, that phrase is a percentage of amounts owed under an "Eligible Instrument."

In other words, Textron (now SKF II) took a security interest in all of the notes which Oceanside received from lot purchasers. But the amount that Oceanside could borrow was based on the notes that met certain standards of quality and collectibility. Even if the Shaws' note is not an "Eligible Instrument," it is part of SKF II's collateral.

Further, denying standing to Oceanside would serve no useful purpose. The limits on who can sue on a negotiable instrument exist in order to protect obligors from liability to multiple claimants to the same instrument. *Hanalei, BRC Inc., v. Porter*, 7 Haw. App. 304, 308 (1988). The only two parties to which the Shaws might be liable are Oceanside and SKF II. Both of them are parties to this adversary proceeding, and both will be bound by the judgment. The court's holding that Oceanside is entitled to enforce the note will bar SKF II from making the same claim. There is no danger that the Shaws might have to pay both Oceanside and SKF II.

Because Oceanside is a non-holder in possession of the note and has the rights of a holder, it is entitled to enforce the note.

**B. Foreclosure and the Shaws' Defenses**

Oceanside argues that it is entitled to a decree of foreclosure and a deficiency judgment and is not obligated to arbitrate any of those claims. The Shaws argue that Oceanside must arbitrate its disputes with them and that, even if Oceanside is entitled to foreclose the mortgage without arbitration, its claims for a deficiency judgment are subject to arbitration. The district court should enter a decree of foreclosure but should refrain, for the time being, from determining whether Oceanside is entitled to a deficiency judgment.

*1. Foreclosure*

Under Hawaii law, a foreclosing mortgagee must prove "'(1) the existence of the [loan] Agreement, (2) the terms of the Agreement, (3) default by [the mortgagor] under the terms of the Agreement, and (4) the giving of the cancellation notice and recordation of an affidavit to such effect.'" *In re Metropolitan Mortg. & Securities, Co., Inc.*, 448 B.R. 527, 533 (D. Haw. 2011) (citing *IndyMac Bank v. Miguel*, 117 Hawai'i 506, 520, 184 P.3d 821, 835 (Haw. App. 2008)).

Oceanside has proven all of these elements and the Shaws do not deny any of them. The Shaws' defenses to the foreclosure are based entirely on Oceanside's failure to develop the Hokuli'a project as the Purchase Contract

U.S. Bankruptcy Court - Hawaii   #13-90053   Dkt # 56   Filed 12/19/13   Page 18 of 22

requires. But the Purchase Contract precludes the Shaws from defending against a foreclosure on that basis.[5]

Paragraph 17 of the Purchase Contract provides that the Shaws' claims against Oceanside would be decided separately from Oceanside's foreclosure claims, and that the Shaws would not use their claims to stay Oceanside's foreclosure:

> Regardless of whether [Oceanside] is awarded or denied [judicial or non-judicial foreclosure], all issues relating to monetary damages or costs of any type relating to disputes that are subject to arbitration under this Paragraph shall continue to be subject to arbitration as provided herein, and *the arbitrator(s) shall have sole and exclusive jurisdiction to decide all such matters*. (Emphasis added.)

Dkt. 37-2, at 7.

Allowing the Shaws to assert Oceanside's alleged breaches of the Purchase Contract as a defense to Oceanside's foreclosure claims would circumvent the parties' agreement to decide their disputes on two separate tracks.

### 2. *Deficiency Judgment*

The Shaws argue that Oceanside's claims for a deficiency judgment must be addressed separately. Paragraph 17 of the Purchase Contract and the

---

[5] Oceanside contends that the release the Shaws signed precludes them from raising defenses to the note based on Oceanside's breaches of the Purchase Contract. Based on my interpretation of the dispute resolution provisions of the Purchase Contract, I need not decide this issue now.

U.S. Bankruptcy Court - Hawaii   #13-90053   Dkt # 56   Filed 12/19/13   Page 19 of 22

comparable provision of the deed give Oceanside the "absolute right" to "foreclose on the property covered by the Mortgage." Dkt. 37-2, at 7. However, according to that same paragraph, "all issues relating to monetary damages or costs of any type" must be arbitrated. Dkt. 37-2, at 7. This raises a question of contract interpretation: is the award of a deficiency judgment part of a "foreclos[ure] on the property covered by the Mortgage" which is to be decided in court, or is it an "issue[]relating to monetary damages or costs of any type" which is subject to arbitration? I conclude that the deficiency judgment claims fall in the latter category.

Oceanside argues that the phrase "foreclose on the property covered by the mortgage" includes the award of a deficiency judgment. According to Oceanside, a foreclosing lender must establish the amount of the debt in order to obtain a decree of foreclosure and that the computation of the deficiency judgment after the foreclosure sale is confirmed is a simple matter of arithmetic.

Oceanside's argument contradicts the plain meaning of the phrase "foreclose on the property." According to Black's Law Dictionary, a "foreclosure" is "a legal proceeding to terminate a mortgagor's interest in property, instituted by the lender (the mortgagee) either to gain title or to force a sale in order to satisfy the unpaid debt secured by the property." Black's Law

U.S. Bankruptcy Court - Hawaii  #13-90053  Dkt # 56  Filed 12/19/13  Page 20 of 22

Dictionary 674 (8th ed.). The right to a deficiency judgment is not included in that definition. "Foreclosure on the property" includes only the sale of the property and either the transfer of title to the lender or the application of the sales proceeds to the secured debt.

Further, Oceanside is incorrect when it argues that the foreclosing lender must establish the exact amount of the debt in order to obtain a decree of foreclosure. The court must only decide that the debt is in default, and need not fix the exact amount of the debt. *Bank of Honolulu, N.A. v. Anderson*, 3 Haw. App. 545, 551 (Haw. Ct. App. 1982).

I conclude that the deficiency judgment is included in the "monetary damages or costs of any type" which are subject to arbitration. In Hawaii, notes and mortgages are contracts. *Beneficial Hawaii, Inc. v. Kida*, 96 Haw. 289, 312 (Haw. 2001). Any deficiency or award of attorneys' fees and costs in this case would relate to a breach of the note and mortgage. The amount that Oceanside is entitled to recover due to the Shaws' breach of the note is an "[issue] relating to monetary damages or costs of any type."

Therefore, I conclude that Oceanside's claims for a deficiency judgment are subject to arbitration under the parties' agreements. That leaves the separate question of whether the arbitration agreement should be enforced in bankruptcy.

U.S. Bankruptcy Court - Hawaii   #13-90053   Dkt # 56   Filed 12/19/13   Page 21 of 22

The bankruptcy court has discretion to decline to enforce arbitration agreements in certain circumstances. *In re Thorpe Insulation*, 671 F.2d 1011 (9th Cir. 2012). I express no opinion on whether the arbitration agreement should eventually be enforced. It is sufficient for present purposes to say that (1) Oceanside's claims for foreclosure are not subject to arbitration, (2) Oceanside's claims for a deficiency judgment are subject to arbitration unless the court decides not to enforce the arbitration provision by virtue of bankruptcy law, and (3), in any event, the two claims should be decided separately.

***

Therefore, I propose that the district court make the foregoing findings of fact and conclusions of law and I recommend that it enter a decree of foreclosure in favor of Oceanside.

**END OF ORDER**

U.S. Bankruptcy Court - Hawaii  #13-90053  Dkt # 56  Filed 12/19/13  Page 22 of 22